**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANDREW E.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25 CV 5253<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrew E. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision [17] is denied, the Commissioner's motion for summary judgment [18] is granted, and the denial of benefits is affirmed.[1]

**Background**

In August 2021, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of July 15, 2021. [12-1] 54. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). [*Id.*] 54, 71. The Appeals Council denied review in March 2025, *see* [*id.*] 45–47, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. [12-1] 56. At step two, the ALJ determined that plaintiff had the following severe impairments: depression, anxiety, arthropathy of the right shoulder, and obesity. [*Id.*] 56–57. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 57–60. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12-1]; [12-2]; [12-3], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [9].

perform medium level work, except that plaintiff: (1) could only to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about 6 out of 8 hours; (3) could sit for a total of about 6 out of 8 hours; (4) could occasionally crawl, and can only occasionally climb ladders, ropes or scaffolds; (5) with his right upper extremity, could frequently–but not constantly–push and pull and can reach overhead no more than occasionally; (6) is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working on ladders or at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery; (7) can understand, remember and carry out simple instructions and can use judgment to make simple work-related decisions; (8) can tolerate occasional interactions with supervisors and coworkers; (9) can tolerate no interactions with the general public; (10) cannot perform work requiring a specific production rate such as assembly line work; and (11) can deal with occasional changes in a routine work setting**.** [*Id.*] 60–69. At step four, the ALJ held that plaintiff could not perform his past relevant work as a van delivery driver, line cook, chef, or cook. [*Id.*] 69–70. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: lab equipment cleaner (25,800 jobs), laminator (15,000 jobs), and laundry worker (13,000 jobs). [*Id.*] 70. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 71.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (internal quotation omitted). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) failed to properly evaluate the opinion of therapist Nitza Solis, LSW; (2) failed to properly support his analysis of plaintiff's subjective symptoms; and (3) failed to demonstrate that a significant number of jobs existed in the national economy which plaintiff could perform. *See* [17] 3–16. The Court rejects all three arguments.

### A. The ALJ's evaluation of Solis's opinion is not reversible error

As part of his application for benefits, plaintiff obtained a medical opinion from Nitza Solis, LSW. [12-2] 834–36. Solis had been seeing plaintiff for hour long weekly

sessions over approximately 5 months at the time she authored her opinion. [*Id.*] 834. Solis opined that plaintiff had several limitations which would prevent him from obtaining or keeping full-time employment. [*Id.*] 835–36. Solis opined that plaintiff had marked limitations, defined as "serious limitation[s] . . . [with] a substantial loss in the ability to effectively function" in the following areas: (1) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (2) working in coordination with or in proximity to others without being distracted; (3) completing a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (4) interacting appropriately with the general public; (5) asking simple questions or requesting assistance; and (6) being aware of normal hazards and taking appropriate precautions. [*Id.*] 835. The ALJ found Solis's opinion unpersuasive after determining it was not well supported nor consistent with the record. [12-1] 69.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors" and an ALJ "must explain how []he considered" those factors, "but []he is not required to explain how []he evaluated the other factors." *Id.* "In considering the supportability and consistency of a medical opinion, an ALJ need only minimally articulate her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024) (citation modified).

When determining the supportability of a medical opinion, an ALJ is instructed to look to the objective medical evidence and supporting explanations provided by the source of the opinion. 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* "[F]or an opinion to be consistent, it must be, reductively, consistent with the record." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In finding that Solis's opinion was not well supported, the ALJ cited three parts of the record. First, the ALJ noted that in the section of the opinion where the evaluator was asked to describe the clinical findings that demonstrated the severity of plaintiff's mental impairments, Solis only wrote that she had observed a sad affect and a sometimes liable mood. [12-1] 69. Second, the ALJ pointed out that on her opinion form, Solis did not identify any findings in her treatment records to support her opinion of plaintiff's severe limitations.[3] [*Id.*] Finally, the ALJ found that the information contained in Solis's counseling records also did not support the limitations present in her opinion. [*Id.*]. Specifically, the ALJ pointed out treatment notes from Solis which documented: plaintiff's gardening and ability to follow the meticulous process of growing certain plants including completing relevant coursework to obtain a certificate, [12-2] 921, 927, 931, 936; plaintiff's coordination of driving four other individuals to work or other appointments, [12-2] 1152; plaintiff's history of going to shops to buy and later re-sell items, [12-2] 1164; and plaintiff's ability to act as a dungeon master when playing dungeons and dragons with his friends and family, [12-2] 918. [12-1] 69. Regarding consistency, the ALJ found Solis's opinion inconsistent with certain other medical records showing that plaintiff is identifying triggers, developing coping strategies, as well as caring for his young child and performing household chores. [12-1] 69; [12-2] 880, 884–85, 889, 1143, 1185.

Plaintiff claims that the ALJ erred in his analysis of both the supportability and consistency of Solis's opinion. [17] 4–9. Regarding supportability, plaintiff argues that sad affect and occasional liable mood are logically connected to the limitations opined by Solis, and thus, the ALJ failed to provide an "evidentiary basis to ground his perception" that Solis's clinical findings did not support the opined limitations. [17] 4. But just because one could read the evidence in a way that supports a medical opinion, does not mean that the ALJ must read it that way as well. The standard that the Court holds an ALJ to is the low bar of minimally articulating his reasoning in a way that allows the Court to follow the evidence cited to the ALJ's conclusion. *Lisa L.*, 2024 WL 1013977, at *2. Plaintiff's claim that, to make his weighing clear, the ALJ should have identified "a medical opinion, a study, a journal article, a consultant's statement, or testimony that stated explicitly that sad affect and occasional labile mood did not support the opinions under evaluation[.]" [19] 2, is far beyond the standard required of ALJs. The ALJ articulated his reasoning: observations of "sad affect and occasional liable mood" were insufficient to support the severe limitations opined by Solis. [12-1] 69. That analysis, combined with his consistency analysis, meets the low bar required of ALJs and demonstrates a sufficient evidentiary basis for the ALJ's conclusion.

---

[3] Plaintiff takes issue with this description regarding Solis's opinion, arguing that the form, read as a whole, includes "evidence beyond just noting her opinions." [17] 5. However, plaintiff also explains that this statement is a "moot point, as her records, and other mental health related records, were submitted to the record along with her opinions." [Id.] 4. The Court agrees and, because the ALJ did cite and discuss the treatment records provided by Solis, the Court further finds that it is clear the ALJ did not rely solely, or even substantially, on the fact that Solis did not cite findings in her treatment records when finding her opinion unsupported. As such the Court need not address this argument further.

Regarding the ALJ's analysis of the consistency of Solis's opinion with other medical record information, plaintiff highlights the portions of his treatment records which document his reported mental health struggles and difficulty interacting with others along with the fact that several of the records reported "minimal" progress. [17] 5–6. But there is no dispute that the ALJ referenced these treatment records. In fact some of the pages cited by plaintiff are the same ones cited by the ALJ.[4]

The ALJ acknowledged that certain treatment notes showed that plaintiff "said that he was struggling with motivation . . . [had] financial stressors contributing to anxiety . . . [and] was quick to anger and 'blurt things out' " among other difficulties. [12-1] 62–63. However, the ALJ also pointed out that those treatment notes recorded that plaintiff "was continuing to work on learning ways to improve communication . . . discussed that [regarding financial anxiety] by growing marijuana, he could save thousands of dollars . . . [and] was also able to recognize warning signs [regarding his anger]." [*Id.*]. The ALJ found these records inconsistent with Solis's opinion because he determined that overall, those records showed "that the claimant has worked on managing his emotions and identifying triggers and coping skills in this regard with some progress." [12-1] 69.

Whether the records as a whole support Solis's opinion and show "minimal" progress or are inconsistent with her opinion and demonstrate, as the ALJ called it "some" progress is a determination for the ALJ to make. The Court does not engage in resolving "debatable evidentiary conflicts[.]" *Warnell,* 97 F.4th at 1052. This is not an instance where the ALJ completely ignored contrary evidence. *Gedatus v. Saul*, 994 F.3d 893, 901–02 (7th Cir. 2021) (holding that an ALJ's summary of medical record evidence can give more weight to evidence supporting an ALJ's conclusion, as long as contrary evidence is not completely ignored). As long as the ALJ provided the logical bridge necessary for a Court to see why he found a medical opinion inconsistent with the record, the Court must uphold his determination. *Chambers v. Saul*, 861 F. App'x 95, 100 (7th Cir. 2021) (explaining that a court's review of the ALJ's decision is deferential and focused on determining whether the ALJ has built the necessary logical bridge from the evidence to his conclusions).

Finally, the Court finds no merit in plaintiff's contention that the ALJ's consideration of his performance of daily activities was improper. [17] 6–7. Contrary to plaintiff's argument, the ALJ never said that plaintiff's performance of daily activities took up "eight hours a day, 40 hours per week[.]" [17] 6. The ALJ just considered these activities as one part of his evaluation of Solis's opinion in assessing whether it was consistent with the rest of the record, and the ALJ minimally articulated his reasoning for why some of the limitations opined by Solis were inconsistent with his view of those activities. [12-1] 69.

---

[4] For a few examples, both the ALJ and the plaintiff cite to the follow pages of plaintiff's treatment notes in the administrative record: [12-2] 891–92, 914, 1185, 1152. [12-2] 69; [17] 5–6.

In summary, the Court finds all of these objections as improper requests for the Court to reweigh the evidence or resolve debatable evidentiary conflicts. The Court can trace the path of the reasoning used by the ALJ when finding Solis's opinion unpersuasive. *Sherise K. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *3 (N.D. Ill. Apr. 30, 2025). Accordingly, the Court rejects plaintiff's first ground for remand.

### B. The ALJ's analysis of plaintiff's subjective symptom allegations is not reversible error.

As part of the ALJ's opinion, he made the following finding regarding plaintiff's subjective symptom allegations:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[12-1] 62. After discussing the record, the ALJ elaborated:

> Since the alleged onset date, these treatment records have shown an essentially baseline mental status with no significant worsening or need for a higher level of care. Indeed, the claimant has described a number of daily activities requiring the ability to understand, remember, apply information, concentrate, persist, and maintain pace such as completing a THC cultivation course, gardening, and cultivating plants . . . taking care of his young child including preparing meals, getting her off to school, and doing household chores . . . and playing videogames and Dungeons and Dragons[.] . . . Indeed, some of the claimant's testimony at the hearing is inconsistent with statements in the record. Driving people to work and school as noted at Exhibit B16F, p. 7, is inconsistent with the claimant's testimony that he only drives occasionally secondary to road rage. His descriptions of "meticulous" care of his marijuana plants (Exhibit B11F, pp. 85, 91, 95, 100), is inconsistent with his testimony of his plants doing poorly due to neglect. While the claimant testified that he remains in bed 3-4 days per week due to symptoms of depression, this is not mentioned in his treatment records (Exhibits B11F and B16F), nor did he mention this at the psychological consultative evaluation (Exhibit B15F).

[*Id.*] 66.

Plaintiff raises several objections to the ALJ's analysis. The Court finds that these objections fall into two categories. First, plaintiff claims that the parts of the record cited by the ALJ "evidenced no inconsistency with alleging an inability to sustain work." [17] 12–13. Second, plaintiff argues the evidence cited by the ALJ could be read in a way which makes them consistent with the plaintiff's testimony. [17] 9–14 ("Proper analysis per SSR 16-3p *may have led to the conclusion* that . . . [plaintiff's] allegations were not inconsistent with record evidence; indeed, the decision did not show them to be.") (emphasis added).

Regarding the first category, the Court does not find that objection proper. The ALJ was determining if plaintiff's subjective symptom descriptions and testimony were credible, not if the plaintiff's claim that he is unable to work was supported by the evidence. And as the Commissioner points out, the ALJ did find that, based on the record evidence, plaintiff suffered from a number of severe impairments which were incorporated into his eventual RFC. [18] 7.

Regarding the second objection, the Seventh Circuit has explained that ALJs' credibility determinations should stand unless they are patently wrong, going so far as to say that even if some reasons given by the ALJ were unsupported, "we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff objected to nearly all of the ALJ's conclusions in this section, arguing that, while the ALJ read parts of the record as inconsistent with plaintiff's subjective symptom allegations, those same pieces of evidence could actually be read to be consistent with plaintiff's testimony. The Court finds the objections raised by plaintiff to be improper requests to weigh the evidence or decide debatable evidentiary conflicts.

For example, the ALJ noted that claimant's testimony claiming that he stayed in bed 3-4 days a week is not mentioned in any of his nearly 300 pages of treatment records over several years nor in his psychological consultative evaluation. [12-1] 66. Plaintiff admits that he did not report "verbatim to his providers[,]" that he stayed in bed 3-4 days per week. [19] 7. But plaintiff argues that the ALJ failed to weigh the evidence because the ALJ did not mention records where plaintiff told providers that he was frequently experiencing depression, that his symptoms of depression included fatigue and isolation, along with other records that reported his depressive episodes lingered 3-4 days. [17] 10. Combining other records together in a way that could be read to support plaintiff's symptom allegation is resolving debatable evidentiary conflicts, which the Court cannot do. The ALJ explained and cited to the evidence he used to discount plaintiff's symptom allegation. An ALJ cannot ignore evidence directly contrary to his opinion. *Charlnette R. v. Dudek*, No. 23-CV-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025). That does not mean he is required to also

discuss evidence that, read in a certain way, could be interpreted as consistent with plaintiff's allegations.

As a second example, plaintiff takes issue with the ALJ highlighting the inconsistency of treatment notes describing him as taking meticulous care of his marijuana plants compared to his testimony of those plants doing poorly due to neglect. [17] 11. Plaintiff explains that the record evidence relied on by the ALJ regarding his ability to care for his plants is from 2022, while his testimony about his plants' condition occurred in 2024. [*Id.*]. That is all true, yet making judgment calls based on the evidence in the record is the ALJ's job. Administrative records do not often leave only one possible conclusion, and an ALJ making one determination out of many options is a textbook example of weighing the evidence. If there had been some record evidence–beyond his testimony–that plaintiff's meticulous care failed to allow his plants to thrive, or that he was unable to keep up with that level of care after 2022, this Court's analysis may be different. But the Court cannot reverse an ALJ's determination because a different inference could be made from the record, even if that inference is reasonable.

For a final example, plaintiff argues that the ALJ incorrectly characterized the record when he wrote that "[s]ince the alleged onset date, these treatment records have shown an essentially baseline mental status with no significant worsening or need for a higher level of care." [17] 10; [12-1] 66. Plaintiff points to records that show a worsening symptomology regarding his anxiety and depression. [17] 10. However, when reading the rest of the ALJ's decision, it appears clear to the Court that the ALJ was discussing the plaintiff's mental status exams when writing "baseline mental status." *Henderson v. Kijakazi*, Case No. 22 C 3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) ("The court applies a common-sense reading to the entirety of an ALJ's decision" and "reads the ALJ's decision as a whole."). When discussing the record evidence in earlier pages, the ALJ wrote "[p]sychiatric follow up . . . since January 2022 have remained essentially baseline with some mood fluctuations but little change in mental status exams[,]" followed by a citation to two treatment notes where Dr. Gibbons recorded the results of a mental status exam." [12-1] 63. Those two records both recorded that plaintiff was oriented "4X[,]" cooperative, had appropriate affect, a "clear/coherent" thought process, normal perception, fair judgment, and limited insight. [12-2] 910, 923.

For these reasons, the Court rejects plaintiff's second ground for remand.

### C. The ALJ's reliance on the vocational expert's testimony is not reversible error.

Finally, the plaintiff claims that the ALJ's burden at step five was not met because he did not ensure that the vocational expert's ("VE") testimony was the product of a reliable method. [17] 14.

During the hearing, a VE testified regarding three jobs that plaintiff could do in the national economy and confirmed that her testimony did not conflict with the Dictionary of Occupational Titles ("DOT"). [12-1] 99–101. The VE further explained that she relied on her 40 years of experience in job placement to fill in the gaps regarding "some issues not addressed in the DOT and companion publication, such as the different claims of reaching, or right versus left, and non-interaction with others, absenteeism, off task but all of that is based on my 40 years of experience in job placement." [Id.] 100–01. Plaintiff did not object to any part of the VE's testimony at the hearing. [Id.] 97–101.

Plaintiff now argues that the O*NET descriptions of two of the occupations identified by the VE conflict with plaintiff's RFC. [17] 14–15. The plaintiff has "forfeited this issue by failing to object to the VE's methodology" during the administrative hearing. Leisgang v. Kijakazi, 72 F.4th 216, 219–20 (7th Cir. 2023). While plaintiff cites cases explaining that, even absent an objection during the hearing, the ALJ must investigate and resolve "obvious . . . apparent conflicts between the VE's evidence and the DOT[,]" Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008), nothing the plaintiff cites extends this principle to O*NET descriptions. [19] 8–9. In fact, the plaintiff fails to cite anything that even suggests the ALJ needs to consult O*NET at all.[5] Because the Court has determined that the ALJ is not required to resolve conflicts between O*NET job descriptions and VE testimony–absent an objection–the Court also finds that the ALJ sustained his burden of demonstrating a significant number of jobs exist in the national economy which Plaintiff could perform.

For these reasons, the Court rejects plaintiff's third ground for remand.

**Conclusion**

Plaintiff's motion to reverse and remand [17] is denied, the Commissioner's motion for summary judgment [18] is granted, and the denial of benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 26, 2026**

[5] The cases cited by plaintiff explain that a VE can use O*NET as one of their sources. *See e.g.*, *Milligan v. Kijakazi*, No. 1:20-CV-266-JPK, 2022 WL 909644, at *4–5 (N.D. Ind. Mar. 28, 2022) ("[T]he VE can also use outside data, including ONET."); *Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016).